IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KARA HAWKINS, Personal Representative of the Estate of Phillip Hatcher, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LINCOLN, a Nebraska Political Subdivision, CITY OF NORTH PLATTE, NEBRASKA, a Nebraska Political Subdivision, GREAT PLAINS REGIONAL MEDICAL CENTER, a Nebraska corporation, and DOES 1-10, in their official and individual capacities,<br><br>Defendants. | CASE NO. 7:10CV5001<br><br><br><br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Dismiss (Filing No. 19) submitted by Defendant North Platte Nebraska Hospital Corporation d/b/a Great Plains Regional Medical Center (the "Hospital"), and the Motion for Leave to File Amended Complaint (Filing No. 22), submitted by Plaintiff Kara Hawkins ("Hawkins"), personal representative of the Estate of Phillip Hatcher ("Hatcher"). For the reasons discussed below, the Motion for Leave to Filed Amended Complaint will be granted, and the Motion to Dismiss will be denied as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

For purposes of the pending Motion to Dismiss, the allegations in the Plaintiff's Complaint (Filing No. 1) are accepted as true.

On June 1, 2008, Hatcher was arrested for suspicion of theft in North Platte, Lincoln County, Nebraska. He had a history of serious psychiatric disorders known to carry a risk of suicide, and he was suicidal at the time of his arrest. (*Id*. at ¶ 4.)  Local police

transported Hatcher to the Hospital for evaluation and medical clearance for incarceration. In response to questions asked by emergency room personnel, Hatcher reported his history of serious psychiatric disorders known to carry a risk of suicide, and related a number of circumstances indicating that he was at risk of attempting suicide,[1] but declined to sign a "no suicide" contract presented to him by the Hospital's emergency room personnel. (*Id*. at ¶ 5.) Rather than keeping Hatcher at the Hospital for further evaluation and treatment, Hospital personnel released him to local police for immediate incarceration at the county jail. (*Id.* at ¶ 6.)

On June 4, 2008, while in his jail cell, Hatcher hanged himself from a noose made of tube socks. He died on June 6, 2008. (*Id*. at ¶ 10.)

Hawkins alleges that the Hospital violated Hatcher's rights under 42 U.S.C. § 1983;[2] the Emergency Medical Treatment & Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; and common law negligence. (*Id*. at ¶¶ 23-27, 32, 33.)

The Hospital moved to dismiss Hawkins's claims against it. (Motion to Dismiss, Filing No. 19.) With respect to the § 1983 claim, in general, the Hospital contends that it did not act under color of state law; the claims present a respondeat superior theory,

---

[1] Hatcher related that his romantic relationship had just ended; that he suffered from sleep disruption and poor appetite; that he had attempted suicide before; that he had financial and legal problems; and that he felt he had no support system. (Complaint, Filing No. 1 at ¶ 5).

[2] In the original Complaint, Hawkins's § 1983 claim against the Hospital appears to this Court to be linked to the alleged EMTALA violation, although the Hospital, noting that the claim "is not entirely clear," interprets it as based on "alleged violations of Hatcher's Eighth Amendment rights to be free from deliberate indifference to his medical needs." (Hospital's Brief, Filing No. 20, p.2-3.) In the proposed Amended Complaint, the § 1983 claims against the Hospital include claims based on alleged violations of due process, equal protection, and cruel and unusual punishment, i.e., deliberate indifference to serious medical needs.

2

insufficient to provide a basis for an action under § 1983; and the allegations in the Complaint do not establish a constitutional violation. With respect to the EMTALA claim, the Hospital contends that the allegations in the Complaint fail to state a claim upon which relief can be granted. With respect to the negligence claims, the Hospital contends that the state-law claims should be dismissed for lack of jurisdiction, following dismissal of the federal claims. (Hospital's Brief in Support of Motion to Dismiss, Filing No. 20.)

Hawkins opposes the Motion to Dismiss (Plaintiff's Brief, Filing No. 21), and has moved to amend her Complaint (Filing No. 22). In the proposed Amended Complaint (Filing No. 22-1) Hawkins alleges "[o]n information and belief" that the Hospital is a *de facto* arm of the Defendants City of North Platte and County of Lincoln "by virtue of contractual relationships with both, to include contractual agreements to care for arrestees, pretrial detainees and persons in need of medical care subject to CITY and COUNTY oversight." (*Id.* at ¶ 2.) She also alleges "[o]n information and belief" that the Hospital and the other Defendants "had a complex and deeply intertwined process of evaluating individuals who are believed to be mentally ill and a danger to themselves and others" and that the other Defendants "had so deeply insinuated themselves into this process that there is a sufficiently close nexus between" the other Defendants and the Hospital so that the Hospital's action may be fairly treated as that of the other Defendants. (*Id.* at ¶ 5.) She clarifies that her First Cause of Action, alleging violations of due process and equal protection, and the infliction of cruel and unusual punishment, is directed at the Hospital as well as the other Defendants. (*Id.* at p. 5.) Finally, with respect to her EMTALA claim, she alleges that the Hospital failed to provide Hatcher with the same quality of screening that it provided to similarly situated outpatients who were not in the custody of law

enforcement, and failed to provide treatment to stabilize his condition despite the Hospital's knowledge of his emergency medical condition.  (*Id.* at ¶ 7.)

The Hospital opposes the filing of the proposed Amended Complaint, asserting that the amendments would not cure the defects in the original Complaint and would be futile. (Hospital's Brief, Filing No. 25, pp. 3-4.)

## STANDARD OF REVIEW

### *Motion to Dismiss*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim.  *Id.* at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations

4

to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

> Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal citations omitted).

### *Motion for Leave to Amend*

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of a motion for leave to amend on the basis of futility "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

## DISCUSSION

### *I. Section 1983 Claims*

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

### *A. State Action*

The Hospital contends that its conduct was private, not performed under color of state law, and cannot give rise to a claim under § 1983. Hawkins contends that discovery

5

will reveal that the Hospital was a willful participant in joint activity with the governmental Defendants, and the Hospital's acts and omissions are "fairly attributable" to the state.

A two-step analysis is used to determine whether a private defendant's conduct is considered to be state action under § 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Regarding the first inquiry, the deprivation alleged in the Complaint with respect to the Hospital appears to be related to Hatcher's rights under EMTALA. The deprivations alleged in the proposed Amended Complaint with respect to the Hospital include alleged deprivations related to Hatcher's rights to due process, equal protection, and his right to be free from cruel and unusual punishment, *i.e.*, deliberate indifference to his serious medical/psychiatric needs.

Regarding the second inquiry, the analysis is more complex.

> [S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. . . . . [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government. [C]hallenged activity may be state action when it results from the State's exercise of coercive power, . . . or when a private actor operates as a willful participant in joint activity with the State or its agents, or when it is controlled by an agency of the State, or when it is entwined with governmental policies, or when government is entwined in [its] management or control.

6

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295-96 (2001) (internal quotations and citations omitted).

In *Wickersham v. City of Columbia,* 481 F.3d 591 (8th Cir. 2007), the Eighth Circuit noted that the "particular circumstances [identified by the Supreme Court in *Brentwood*] are merely examples and not intended to be exclusive." *Id.* at 597. "To ascertain whether there is state action in a case, [the Court] examine[s] the record to determine whether the conduct at issue is fairly attributable to the state." *Id.* (internal quotations and citations omitted) *See also*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 n.6 (1982) (Actions of a private party may be "fairly attributable" to the state in certain circumstances when the private party acts in concert with state actors.) The "ultimate conclusion must turn on the particular facts of the case, since '[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.'" *Id.* (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). The Eighth Circuit further noted that "the one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Id*. Mere approval or acquiescence by the state does not suffice; however, action by a private entity together with state officials or with significant aid from them *may* suffice. *Id. See also, Mershon v. Beasley*, 994 F.2d 449, 451-52 (8th Cir. 1993) (In order for a private person who willfully participates in joint action with a state actor to have acted under color of state law, there must at least be a shared purpose to deprive the plaintiff of a constitutional right, namely, "a mutual understanding, or a meeting of the minds, between the private party and the state actor.")

The original Complaint does not set forth sufficient allegations from which this Court can infer state action on the part of the Hospital. The proposed Amended Complaint,

7

although basing its allegations on "information and belief," does set forth sufficient allegations to make Hawkins's § 1983 claims against the Hospital plausible. In reaching this conclusion, this Court is mindful of the Eighth Circuit's admonition to the effect that whether a private party's actions are fairly attributable to the state is a fact-intensive exercise that requires an examination of the record in each particular case. This Court is also mindful of the asymmetry of information that exists in cases like this one, where the individual whose rights are alleged to have been violated is deceased, and the relevant information is in the possession of the defendants. This Court concludes, therefore, that the filing of the proposed Amended Complaint would not be futile with respect to the issue of state action, and that leave to file should be granted.

### B. *Respondeat Superior*

The Hospital contends that it can act only through its agents or employees, and that Hawkins's § 1983 claim is based on the theory of respondeat superior, which does not provide a proper basis for a § 1983 action. See, e.g., *Whitson v. Stone County Jail*, 2010 WL 1610071, at *6 (8th Cir. Apr. 22, 2010) (citing *Iqbal*, 129 S. Ct. at 1949) (holding that the doctrine of respondeat superior cannot serve as the basis for imposing liability in a federal civil rights action). The Hospital notes that the original Complaint makes no allegation that the Hospital "as an entity, did anything affirmatively to harm Hatcher or violate his Eighth Amendment rights; for example, there is no allegation that any policy of [the Hospital] is unconstitutional." (Hospital's Brief, Filing No. 20 at p. 12.) The Hospital cites the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) in support of its position. However, the Supreme Court in *Monell* held that where the allegedly unconstitutional action implements a body's policy statement, regulation, decision officially adopted and promulgated by the body's officers,

8

or a custom, even though such a custom has not received formal approval through the body's official decision-making channels, the body can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *Id*. at 690-91.

The proposed Amended Complaint does include allegations to the effect that the Hospital had a standard for the screening of patients, and did not apply that standard of care when screening Hatcher for an emergency medical condition. Liberally construed, the Amended Complaint contains allegations that the Hospital had a custom or practice of applying a different standard for the screening and/or treatment of patients who, like Hatcher, were in law enforcement custody or were not paying for their medical services through customary channels. Accordingly, the Court finds that the filing of the Amended Complaint would not be futile with respect to the issue of the Hospital's potential liability under § 1983.

### C. Allegations of Eighth Amendment Violation

As noted above, this Court construed Hawkins's Third Cause of Action, the § 1983 action against the Hospital, to be based on an alleged deprivation of Hatcher's rights under EMTALA, *i.e.*, an alleged deprivation of rights under federal statute, rather than under the United States Constitution. The Hospital noted that the Complaint was "not entirely clear in this regard," but construed the cause of action to be one based on an alleged Eighth Amendment violation. (Hospital's Brief, Filing No. 20, pp. 2-3). Because the Court will allow the filing of the Amended Complaint, the Hospital's Motion to Dismiss will not be granted on the basis of the inadequacy of the Plaintiff's factual allegations of a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" (42 U.S.C. § 1983).

### D. EMTALA

EMTALA requires hospitals with emergency departments to "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). It also requires such hospitals to provide "for such further medical examination and such treatment as may be required to stabilize the medical condition, or for the transfer of the individual to another medical facility[.]" 42 U.S.C. § 1395dd(b)(1). Civil remedies are available based upon hospitals' or physicians' negligent violations of these provisions. 42 U.S.C. § 1395dd(d).

The Hospital contends that the allegations in the Complaint demonstrate that the Hospital provided Hatcher with screening, and did not gain actual knowledge that Hatcher had any emergency medical condition. Accordingly, the Hospital asserts that it cannot be said to have failed to stabilize any known medical emergency condition. (Hospital's Brief, Filing No. 20, p.18, citing *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1140 (8th Cir. 1996) (Stabilization before discharge applies "only if the hospital *determines* that the individual has an emergency medical condition.") (emphasis in original, internal quotations omitted)).

Hawkins alleges that the Hospital did not provide for an appropriate medical screening examination for Hatcher, and did not provide such treatment as was required to stabilize his condition or transfer him to another medical facility. Complaint, Filing No. 1, ¶¶ 23-27; proposed Amended Complaint, Filing No. 22-1, ¶¶ 23-28. Moreover, in the proposed Amended Complaint, Hawkins does allege that the Hospital knew Hatcher had an emergency medical condition, and failed to provide treatment to stabilize his condition, or transfer him to another facility. (Proposed Amended Complaint, Filing No. 22-1 at ¶ 7). Liberally construing the proposed Amended Complaint, the Court concludes that Hawkins

has alleged that the Hospital failed to provide Hatcher with appropriate screening to determine whether or not he had an emergency medical condition, and failed to stabilize or transfer him, after determining that he did have an emergency medical condition. Accordingly, the Court finds that the filing of the Amended Complaint is not futile with respect to Plaintiff's EMTALA claim.

## II.  State Law Negligence Claims

Because the Court will allow the Plaintiff to file her Amended Complaint, and will not dismiss her federal law claims at this juncture, the state law negligence claims will not be dismissed for lack of jurisdiction.

IT IS ORDERED:

1. Plaintiff Kara Hawkins's Motion for Leave to Amend Complaint (Filing No. 22) is granted;

2. Plaintiff will file her proposed Amended Complaint (Filing No. 22-1), without change, as a separate filing, on or before May 24, 2010;

3. Defendant Great Plains Regional Medical Center's Motion to Dismiss (Filing No. 19) is denied as moot; and

4. Defendant Great Plains Regional Medical Center will respond to Plaintiff's Amended Complaint within fourteen days after the filing of the Amended Complaint.

DATED this 20th day of May, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

11