# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **KARA HAWKINS, Personal Representative of the Estate of Phillip Hatcher, Deceased,** | **CASE NO. 7:10CV5001** |
| **Plaintiff,** | |
| v. | **MEMORANDUM AND ORDER** |
| **COUNTY OF LINCOLN, a Nebraska Political Subdivision, CITY OF NORTH PLATTE, NEBRASKA, a Nebraska Political Subdivision, GREAT PLAINS REGIONAL MEDICAL CENTER, a Nebraska corporation, and DOES 1-10, in their official and individual capacities,** | |
| **Defendants.** | |

This matter is before the Court on the Defendants' Motions for Summary Judgment (Filing Nos. 50, 79). Also before the Court is the Defendant County of Lincoln's Motion to Strike (Filing No. 82), the Plaintiff's Motions to Strike (Filing Nos. 72, 95), and the Plaintiff's Motion for Enlargement of Time (Filing No. 145). For the reasons discussed below, the Motion for Summary Judgment filed by Defendant County of Lincoln will be granted in part, the Motion for Summary Judgment filed by the Defendant City of North Platte will be granted, the Motions to Strike will be denied, and the Motion for Enlargement of Time will be denied.

## BACKGROUND

Defendant County of Lincoln's brief in support of its motion does not comply with NECivR 56.1(a), requiring the moving party to state the material facts in short numbered paragraphs, though its section stating the facts does include pinpoint citations to its index of evidence. Accordingly, the Plaintiff was unable to respond using numbered paragraphs.

Plaintiff has not responded to North Platte's Motion. Nevertheless, the Amended Complaint (Filing No. 27), the Defendants' Answers (Filing Nos. 24, 28, 29), the parties' briefs (Filing Nos. 51, 70, 81, 83), and the indexes of evidence demonstrate that the following facts are not in dispute:

Plaintiff Kara Hawkins ("Plaintiff") is a resident of the City of North Platte, in Lincoln County, Nebraska, and is the personal representative of Phillip Hatcher ("Hatcher"), deceased. Defendants County of Lincoln ("Lincoln County") and City of North Platte ("North Platte") are both political subdivisions of the State of Nebraska. Defendants Does 1-10 (collectively "Does") are and were employed by Defendants Lincoln County and North Platte as correctional officers, jailers, and/or law enforcement officers at relevant times. Does are sued in their official and individual capacities. Defendant Great Plains Regional Medical Center ("GPRMC") is a Nebraska corporation with its principal place of business in Lincoln County, Nebraska.

In the early hours of June 1, 2008, Police Officers from the North Platte Police Department responded to a domestic disturbance between Hatcher and his girlfriend, Tara Shanahan. North Platte police officers released Hatcher, but later suspected that he had stolen a vehicle and began to search for him. Later in the afternoon of June 1, 2008, Officers in the Lincoln County Sheriff's Office were called to assist in Hatcher's arrest because Hatcher was believed to be in a motel outside North Platte city limits. Upon arrival at the motel, law enforcement officers entered Hatcher's room and arrested him for offenses related to drugs and theft. North Platte officers noted cuts on Hatcher's wrists and transported him to GPRMC for treatment. After an examination and treatment, Dr. David Hurst, GPRMC's emergency medicine physician, released Hatcher for incarceration

in the Lincoln County Jail (the "Jail"). Before releasing Hatcher to the Jail, Dr. Hurst asked to telephone the Jail to determine whether the Jail was equipped for handling someone with suicidal thoughts. North Platte police records indicate that Dr. Hurst advised that Hatcher should be placed in a cell, naked, with nothing else in the cell.

After treatment and release, Hatcher was transported from GPRMC to the Jail. During the intake process at the Jail, Hatcher was asked if he previously had attempted to commit suicide. Hatcher responded that he had attempted suicide immediately prior to being arrested. Lincoln County claims that upon his admittance to the Jail, Hatcher was issued an isolation gown and isolation blanket, both designed to prevent inmates from harming themselves, and that he was placed in an isolation cell with fifteen-minute checks initiated. Lincoln County claims that, later in the evening on June 1, Hatcher requested to be moved from the isolation cell to a cell that was not permanently illuminated, because he wanted to sleep. Lincoln County Correctional Officer Regina Williams states that Hatcher assured her he was not going to harm himself, and jailers believed that sleep would help Hatcher's mood. Hatcher was moved from the isolation cell to the "federal" cell block. Later that night, Hatcher was issued a jump suit and some personal belongings. Officer Williams states that Hatcher was placed in the federal cell block because it would enable guards to check on Hatcher on a more frequent basis than every fifteen minutes, but the evidence does not indicate whether regular checks were performed. Lincoln County claims that fifteen-minute checks for Hatcher were indicated on the Roll Call for June 1, 2008, and the first two shifts of June 2, 2008. On June 2, 2008, Hatcher participated in a hearing in the County Court for Lincoln County, Nebraska, where he

appeared for arraignment. Hatcher requested an attorney and stated that he did not have funds to employ his own.

On June 4, 2008, Hatcher hanged himself in his cell using his tube socks. Officers found Hatcher hanging from a bunk-bed in his cell, with a sock around his neck. Correctional officers cut Hatcher down and attempted CPR. Emergency personnel then transferred Hatcher to GPRMC for medical treatment. Hatcher never regained consciousness and was pronounced dead on June 6, 2008. Photographs taken by the North Platte Police Department show that the tube socks were anchored to the upper bunk in Hatcher's cell. The bunk was constructed with a pattern of holes in its surface, and the socks were knotted above one of the holes and tied into a noose below. Hatcher was not on suicide watch on June 4, 2008.

## STANDARD OF REVIEW

A court should grant a motion for summary judgment "if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fu. v. Owens*, 622 F.3d 880, 882 (8th Cir. 2010) (citing *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)). The proponent for a motion for summary judgment "'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgersen v. City of Rochester*, 605 F.3d 584, 594 (8th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response to the proponent's showing, the opponent has an "obligation

4

to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty. Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Matsaushita Elec. Indus. Co.*, 475 U.S. at 586).

## DISCUSSION

**I.  Motions to Strike**

Regarding Motions to Strike, the Plaintiff has moved to strike the Affidavits of Regina Williams and Dean Sparks (Filing No. 72). Plaintiff argues that Dean Sparks lacks personal knowledge of the events and that the affidavit (Filing No. 52-1) violates Fed. R. Evid. 1002. Plaintiff also objects to the Affidavit of Regina Williams (Filing No. 52-2) on the grounds that the affidavit lacks proper foundation and offers legal conclusions. Defendant Lincoln County has moved to strike the Affidavit of Lindsay Hayes (Filing No. 82) on the ground that Plaintiff failed to identify Hayes as an expert and Hayes is not an expert under Fed. R. Evid. 702. Finally, Plaintiff has moved to strike the Index of Evidence in Support of Lincoln County's Motion to Strike the Affidavit of Lindsey Hayes (Filing No. 95) on the ground that Plaintiff asked for the documents contained in the Index but did not receive them, so Lincoln County should be precluded from introducing the documents at this stage.[1] The Court has considered each of these motions and concludes that they should

---

[1] Although Plaintiff asks that the Index be stricken, Plaintiff has not requested the opportunity to respond to evidence contained in the reply brief or Index.

be denied. However, the Court will consider the parties' objections when determining the weight that should be given to the evidence.

## II.     Qualified Immunity

Lincoln County and North Platte argue that they are entitled to qualified immunity from suit. Qualified immunity protects government officials from suit under 42 U.S.C. § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Nance v. Sammis*, No. 09-1353, 2009 WL 3735814, at *3 (8th Cir. Nov. 10, 2009). To analyze qualified immunity, the Court reviews: "(1) whether the facts alleged, construed in the light most favorable to the nonmoving party, establish a violation of a constitutional right, and (2) whether such right was clearly established so that a reasonable [state official] would have known her actions were unlawful." *El-Ghazzawy v. Berthiaume*, No. 10-2058, 2011 WL 869599, at *3 (8th Cir. March 15, 2011). The Court, in its discretion, may decide which prong it addresses first. *Id.* (citing *Dodd v. Jones,* 623 F.3d 563, 566-67 (8th Cir.2010); *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). If no reasonable fact-finder could answer both questions affirmatively, the defendant is entitled to qualified immunity. *Nance*, 2009 WL 3735814, at *3.

Defendants do not challenge that Hatcher's right to medical care under the Fourteenth Amendment was an established constitutional right.[2] Nevertheless, the Defendants challenge Plaintiff's assertion that a reasonable official in the Defendants'

---

[2] Though pre-trial detainees fall outside the protection of the Eighth Amendment's prohibition on cruel and unusual punishment, the Fourteenth Amendment affords them the same rights as convicted prisoners with regard to medical treatment. *Spencer v. Knaipheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999).

6

circumstances would have known that his or her actions were unlawful. The Eighth Circuit has "generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide medical treatment." *Hott v. Hennepin County, Minn.*, 260 F.3d 901, 905 (8th Cir. 2001). Prison officials violate a prisoner's right to medical care if their conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 108 (1976). "Deliberate indifference" on the part of prison officials requires a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference has both an objective and subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (citing *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006)). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.*

**A.    Objectively Serious Medical Need**

"In evaluating an official's response to a known suicide risk, we should be cognizant of how serious the official knows the risk to be." *Gregoire v. Class*, 236 F.3d 413, 418 (8th Cir. 2000). When evaluating an official's response to serious medical needs in terms of prisoner suicide, "the analysis focuses on the particular risk of suicide posed by the specific prisoner, rather than on the generalized threat of suicide among the general population of prisoners as a whole." *Hott*, 260 F.3d at 905. In *Hott*, the Eighth Circuit found that the plaintiff failed to demonstrate a serious medical need because "[i]n short, there is no

7

evidence to indicate that the [detention center] or its employees had actual knowledge that [the prisoner] posed a serious risk of harm to himself." *Id.*

The Plaintiff here has demonstrated at least a material issue of fact as to whether Defendants were aware that Hatcher posed a risk of harm to himself. The undisputed facts indicate that officials were aware of Hatcher's earlier suicide attempt. The police report submitted by the Plaintiff indicates that Dr. Hurst advised that Hatcher be placed in a cell, naked, with nothing else in it. In her affidavit, Regina Williams testified that because Hatcher had cut his left wrist, he was placed on fifteen-minute checks on June 1, 2008. (Filing No. 51-2 ¶ 3.) Dean Sparks testified that Hatcher disclosed during the intake process that he attempted suicide just before his arrest and he was put in an isolation cell with an isolation gown and blanket that were designed to prevent inmates from harming themselves. (Filing No. 52-1 ¶¶ 15-18.) Accordingly, Plaintiff has demonstrated that Hatcher had an objectively serious medical need, at least on June 1, 2008, and that Jail officials were aware of that need upon Hatcher's intake to the Jail. Plaintiff also has demonstrated a genuine issue of material fact as to whether Hatcher continued to have an objectively serious medical need at the time he was removed from suicide watch and up until the time he hanged himself in his cell, and whether the Defendants were aware of such need.

**B.     Deliberate Disregard of the Need**

After demonstrating an issue of fact as to the Defendants' awareness of an objectively serious medical need, the Plaintiff must demonstrate a genuine issue of material fact as to whether the Defendants were deliberately indifferent to that need. The Court analyzes the Defendants' alleged deliberate indifference in two parts. *Rellegert v.*

8

*Cape Girardeau County*, 924 F.2d 794, 796 (8th Cir. 1991). First, the Court considers whether the actions of any individual Defendants, the Does, amounted to deliberate indifference toward Hatcher's serious medical needs. Second, the Court considers whether the Defendant political subdivisions' policies, customs, or training were deficient to the point of constituting deliberate indifference to suicidal prisoners.

### <u>1. Defendant "Does" in Their Official and Individual Capacities</u>[3]

Although the Plaintiff has shown that Hatcher had a serious medical need, at least as of June 1, 2008, and the Plaintiff has demonstrated a genuine issue of material fact as to whether the Defendants were aware of that need at the time Hatcher was taken off suicide watch, Plaintiff has not shown that any individual Defendants were deliberately indifferent to Hatcher's needs. The Eighth Circuit has emphasized that "deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003). Even where a jury may reasonably conclude that a jailor acts imprudently, negligently, or wrongly, a court cannot conclude as a matter of law that a jailor acted with deliberate indifference. *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797-98 (8th Cir. 1991); *see also Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) (failure to check vital signs within the doctor-recommended time at most amounted to negligence; there was no showing of deliberate indifference). The subjective finding of deliberate indifference depends on the jailor's state of mind. *Williams*, 201 F.3d at 1065 (noting that though the plaintiff contended that state of mind was a factual issue, "the law requires that plaintiff make a showing of

---

[3] "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

subjective awareness by the prison officials of a '*substantial* risk' of '*serious* harm.'") (emphasis in original)). In *Williams*, the only contention of deliberate indifference was that a prisoner's vital signs were not checked for an extended period. *Id.* The Eighth Circuit determined that the plaintiff did not demonstrate that the defendants' conduct amounted to more than negligence, noting that the "state of mind required is 'more blameworthy than negligence.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Here, the Plaintiff has failed to allege that any individual's acts or omissions amounted to conduct more blameworthy than mere negligence. Plaintiff's principal contention of deliberate indifference on the part of the individual Defendants is that Hatcher was not properly monitored. Even if there is a question of fact as to whether Hatcher's actions after the first night in the Jail justified taking him off suicide watch, there is no allegation that individual Jail officials acted with deliberate indifference. Plaintiff simply alleges that officials failed to protect Hatcher, but offers no evidence that the individual Defendants were deliberately indifferent to Hatcher's serious medical needs. While it may, or may not, have been negligent for the individual Defendants to take Hatcher off the suicide watch without having him evaluated by a physician or other professional, the individual Defendants' conduct was not more blameworthy than mere negligence.

    2. *Policy, Custom, and Failure to Train*

        a. Lincoln County

In actions under § 1983, "a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). The plaintiff bears the burden of

establishing that training, policies, or customs are deficient.  *See Turney v. Waterbury*, 375 F.3d 756, 762 (8th Cir. 2004).  In *Wever v. Lincoln County, Neb.*, 388 F.3d 601, 607-08 (8th Cir. 2004), the Lincoln County sheriff asserted that the Jail had a good-faith policy in place for dealing with prisoners with suicide risks.  *Id.*  The Eighth Circuit disagreed, noting that the suicide prevention "policy" submitted by Lincoln County's sheriff did not indicate when, how, or whether it was ever adopted.  *Id.*  Further, the evidence did not show why the sheriff believed the policy was adequate to respond to the problem of inmate suicide, nor did it indicate how officers were trained to implement it.  *Id.*

In this case, Lincoln County admits that it was aware of and concerned by a high number of attempted suicides in recent years, and even retained a nurse practitioner from the United States Surgeon General's Office to review their policies and train staff.  (Filing No. 83 at 20.)  Thus, the Court is satisfied that, for the purposes of this Motion, Lincoln County was aware that deficiencies may have existed in its suicide prevention training prior to Hatcher's incarceration.  Lincoln County also claims that it trained its employees on suicide prevention, and it has offered into evidence the materials that employees must review, and upon which they are later tested.  Although these materials illustrate a training procedure on the dangers of suicidal inmates, it is unclear when this policy was adopted, or how it was implemented.  The training materials show that Jail officers may have been trained on the dangers of inmate suicides, but no evidence shows how officers were trained to implement specific protocols and procedures at the Jail.

In most cases where the Eighth Circuit has determined that a political subdivision's training and policies did *not* reflect deliberate indifference, the defendants demonstrated

11

how their policies were implemented to deal with suicidal inmates in their jails. *See Yellow Horse*, 225 F.3d at 928-29 (county had suicide prevention policy that screened inmates for suicide potential, designated who could remove a prisoner from suicide watch, described the process by which a prisoner could be removed from suicide watch, and designated how often the policy was to be reviewed for efficacy); *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (prison had specific policy in place for the protection of inmates classified as suicide risks); *Rellegert*, 924 F.2d at 796 (defendant had general policy of housing inmates in a common area as a measure to prevent suicide). In contrast, in *Turney v. Waterbury*, 375 F.3d at 762, the Eighth Circuit determined that the plaintiff failed to meet its burden of showing that the defendant municipality failed to train its officers in suicide screening and prevention. *Id.* Like here, the defendant provided materials to officers that informed them how to recognize and respond to suicide risks. *Id.* The Eighth Circuit concluded that based on this evidence, the plaintiff failed to demonstrate that the policies of the defendant municipality were deliberately indifferent to the constitutional rights of its inmates. *Id.* However, the Eighth Circuit specifically noted that the plaintiff in *Turney* made no argument that the defendant municipality was "deliberately indifferent by thrusting known suicide risks like [the plaintiff] into situations which increase their chances of success, such as a single cell with exposed bars and bed sheets." *Id.* at 762 n. 3.

Unlike the plaintiff in *Turney*, the Plaintiff in this case does argue that Lincoln County was deliberately indifferent by putting Hatcher in a situation that increased the risk of a successful suicide attempt. Lincoln County has not shown that its evaluation of Hatcher was the result of any policy, written or oral. Lincoln County admits that Hatcher was not

on suicide watch the night he hanged himself. Lincoln County's own evidence states that "fifteen minute checks were discontinued in the Roll Call on June 2, 2008, as Mr. Hatcher appeared to be in better spirits, as evidenced by him socializing with other inmates, eating his meals, and at one point he asked for an envelope because he wished to write his attorney." (*See* Sparks Aff., Filing No. 52-1 ¶ 32.). While these procedures may have been reasonable under a suicide prevention policy, there is no evidence that officers were acting pursuant to a policy or that any such policy existed. Thus, there is an issue of fact as to whether Lincoln County failed to train its officers on the proper lifting of an inmate suicide watch. In sum, while the Plaintiff has not alleged that the actions of individual officers were deliberately indifferent, there remains an issue of fact as to whether Lincoln County acted with deliberate indifference by failing to have a specific policy for determining when an inmate can be removed from suicide watch and placed in a situation that may increase the likelihood of a successful suicide attempt.

> b. *North Platte*

Regarding North Platte, the Court first addresses Plaintiff's Motion for Enlargement of Time and Showing of Good Cause (Filing No. 145). On November 17, 2010, Plaintiff moved for an extension of time to respond to North Platte's Motion for Summary Judgment, in order to depose certain employees of North Platte. The Court granted Plaintiff's Motion, giving Plaintiff until February 20, 2011, the date specifically requested by Plaintiff, to respond to North Platte's Motion. A review of the docket shows that Plaintiff filed notices to take depositions of North Platte employees on January 21, 2011, and on February 2, 2011. On March 14, 2011, Plaintiff moved for another extension of time, noting that the parties were unable to schedule the depositions until February 23, 2011. Because the

parties knew the depositions would occur after the time for response had passed, the Court will not grant a further extension.

Despite the lack of a response from Plaintiff, the Court is able to analyze North Platte's Motion based on the Plaintiff's allegations. The undisputed facts show that a North Platte police officer transported Hatcher to GPMC for evaluation and medical clearance following his arrest. The Amended Complaint contains no other allegations regarding misconduct by North Platte. There is no allegation of a causal relationship between any acts or omissions by North Platte and Hatcher's suicide, because Hatcher was promptly transferred to Lincoln County custody. None of Plaintiff's allegations suggests any wrongdoing on the part of North Platte, let alone deliberate indifference to Hatcher's serious medical needs. Therefore, North Platte's Motion will be granted.

Accordingly,

IT IS ORDERED:

1. Defendant County of Lincoln's Motion for Summary Judgment Based on Qualified Immunity (Filing No. 50) is granted in part as follows:

    To the extent that Defendants DOES 1-10 are employees of Defendant County of Lincoln, Plaintiff's claims against them in their individual and official capacities are dismissed, with prejudice;

    the Motion is otherwise denied;

2. Defendant City of North Platte's Motion for Summary Judgment (Filing No. 79) is granted, and Plaintiff's claims against Defendant City of North Platte are dismissed, with prejudice;

3. The Motions to Strike (Filing Nos. 72, 95), filed by Plaintiff Kara Hawkins are denied;

4. The Motion to Strike (Filing No. 82) filed by Defendant County of Lincoln is denied; and

5. The Motion for Enlargement of Time and Showing of Good Cause (Filing No. 145) is denied.

DATED this 25th day of March, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge