IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KARA HAWKINS, Personal Representative of the Estate of PHILLIP HATCHER, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| COUNTY OF LINCOLN, a Nebraska Political Subdivision; DOES 1-10, in their official and individual capacities; CITY OF NORTH PLATTE, a Nebraska Political Subdivision; and GREAT PLAINS REGIONAL MEDICAL CENTER, a Nebraska corporation, | ) ) ) ) ) ) ) ) ) | 7:10CV5001<br><br>MEMORANDUM AND ORDER |
| Defendants. | ) | |

This matter is before the magistrate judge pursuant to 28 U.S.C. § 636 on the following motions:

- #109   Plaintiff's Motion to Vacate Discovery Limitations
- #118   Lincoln County's motion to strike plaintiff's brief in support of plaintiff's motion to vacate discovery limitations
- #115   Lincoln County's Motion for Protective Order or, in the alternative, to quash requests for admissions served on the County by the plaintiff

The court has also considered the following documents, which were filed in conjunction with these motions:

- #110   Plaintiff's Evidence Index in support of #109
- #117   Plaintiff's Brief in support of #109
- #122   Plaintiff's Response to #118
- #123   Plaintiff's Evidence Index in support of #122
- #124   Plaintiff's response to #115
- #125   Plaintiff's Evidence Index regarding #124
- #127   Brief of Great Plains Regional Medical Center in opposition to #109
- #129   Lincoln County's reply brief in support of #115 and in opposition to #109

## BACKGROUND

### A. Nature of the Case

On June 1, 2008, plaintiff's decedent, Phillip Hatcher, was arrested on suspicion of theft and traffic offenses. The arrest was made in North Platte, Lincoln County, Nebraska by officers employed by the City of North Platte. Phillip suffered from serious mental illnesses and, at the time of his arrest, was attempting to take his own life by cutting his wrist. City police transported Phillip to the Great Plains Regional Medical Center ("GPRMC") for evaluation, at which time Phillip reported a history of psychiatric disorders, suicide attempts, and personal problems.

GPRMC released Phillip to the City police for immediate incarceration at the county jail. During his incarceration at the Lincoln County Jail, Phillip exhibited signs of mental illness and suicidality. The Nebraska Jail Standards require jails to train their employees to recognize signs that an inmate is mentally ill and suicidal. Plaintiff alleges that the County agents and employees disregarded and were deliberately indifferent to signs that Phillip was mentally ill and suicidal, and the County failed to provide Phillip with medical treatment. On June 4, 2008, County employees found Phillip hanging in his cell from a noose fashioned from his tube socks. He died on June 6, 2008.

Plaintiff's Amended Complaint (Filing #27) alleges at paragraph 5 that the three defendants acted in concert, in furtherance of "a complex and deeply intertwined process of evaluating individuals who are believed to be mentally ill and a danger to themselves and others." "On information and belief," plaintiff alleged that GPRMC is a *de facto* arm of the City and County by

virtue of contractual agreements to provide medical care for arrestees, pretrial detainees and prisoners who are subject to City and County oversight. (Filing #27 at ¶ 2).[1]

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against all defendants; a claim pursuant to the Emergency Medical Treatment & Labor Act (EMTALA) against GPRMC; and state law claims for negligence against Lincoln County and GPRMC.

### B.  Orders Limiting Discovery

Lincoln County filed a motion for summary judgment based on qualified immunity (Filing #50) and requested a stay of discovery pending the court's ruling. On August 26, 2010, the court entered an order staying discovery as to Lincoln County and any Doe defendants who were County employees, without prejudice to plaintiff filing, if necessary, a motion for leave to conduct limited discovery on the issue of qualified immunity. Plaintiff sought leave to conduct certain discovery (Filing #63), but Judge Smith Camp denied permission to conduct the discovery proposed by the plaintiff. (Filing #67, Memorandum and Order filed Oct. 4, 2010).

The City of North Platte filed a motion for summary judgment based on qualified immunity (Filing #79) but did not request a stay of discovery. The City of North Platte has provided discovery to the plaintiff.

On October 15, 2010, counsel participated in a scheduling conference with Magistrate Judge Zwart, during which counsel for GPRMC announced that GPRMC intended to move for summary judgment on the ground it was not a state actor and could not be held liable under § 1983. The resulting Memorandum and Order (Filing #73) indicates that GPRMC orally moved to limit its

---

[1]These allegations are discussed in Judge Smith Camp's May 20, 20109 Memorandum and Order (Filing #26, posted on Westlaw at 2010 WL 2039656) granting plaintiff's motion for leave to file the Amended Complaint.

discovery obligations to the "state actor" issue because the plaintiff had filed a negligence action against GPRMC in state court and GPRMC did not want to defend both lawsuits at the same time.[2] The oral motion was granted, over the plaintiff's objection. Judge Zwart's order provides: "Until further order of the court, the discovery directed between the parties and Great Plains Regional Medical Center shall be limited to the issue of whether the medical center was, at the times and under the circumstances relevant to this case, a state actor as that term is defined for the purposes of 42 U.S.C. § 1983."

### C. Motion to Vacate Limitations on Discovery

Under Fed. R. Civ. P. 26(b)(1), the parties to a lawsuit may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The court will consider the elements of the parties' pending claims and defenses in conjunction with their arguments concerning the appropriate scope of discovery.

#### 1. Section 1983 Claims

Under 42 U.S.C. § 1983, a plaintiff may recover damages when a defendant, acting under color of state law, deprives the plaintiff of rights guaranteed by the Constitution or laws of the United States.

In summary, the plaintiff contends that the defendants are liable under § 1983 for violations of Hatcher's rights under the Eight and Fourteenth Amendments to the United States Constitution

---

[2]It appears that GPRMC found it equally inconvenient to defend plaintiff's state court lawsuit while the federal court lawsuit was pending. On December 17, 2010, the state district court determined that the state court lawsuit "should be stayed and abated until such time as the case involving the same parties currently pending in the United States District Court for the District of Nebraska is resolved." (Filing #128-10, Journal Entry filed 12/17/2010 in *Hawkins v. Great Plains Regional Med. Ctr., et al.*, case No. CI 10-312, District Court of Lincoln County, Nebraska).

-4-

because they implemented a policy or custom of ignoring reports of constitutionally inadequate protection of mentally ill and suicidal detainees, and failed to train employees to provide constitutionally adequate protection of mentally ill and suicidal detainees.

Plaintiff alleges that GPRMC acted "under color of state law" in that Hatcher was treated at the facility at the request or instruction of law enforcement, pursuant to GPRMC's contracts with Lincoln County and the City of North Platte to care for arrestees, pretrial detainees and prisoners in need of medical care.  GPRMC's liability under § 1983 is also premised on alleged violations of EMTALA.

### a. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "is in part an entitlement not to be forced to litigate the consequences of official conduct."  *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945-46 (2009).

To resolve a government official's claim of qualified immunity, the court determines "(1) whether the facts alleged, construed in the light most favorable to the nonmoving party, establish a violation of a constitutional right, and (2) whether such right was clearly established so that a reasonable officer would have known his or her actions were unlawful."  *El-Ghazzawy v. Berthiaume*, 2011 WL _____ at *_____, Case No. 10-2058 (8th Cir. Mar. 15, 2011); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).  The court may address these questions in either order.  *Williams*, 600 F.3d at 1012  (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).  The

defendant official bears the burden of pleading and proving the affirmative defense of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. at 814; *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir. 1993).  For example, "[t]he defendant bears the burden of proving that the law was not clearly established at the time the alleged violation occurred." *Watertown Equip. Co. v. Norwest Bank*, 830 F.2d 1487, 1490 (8th Cir. 1987) (citing *Harlow*, 457 U.S. at 808).

A claim of immunity is distinct from the merits of the plaintiff's claim that his rights have been violated.  *See Mitchell v. Forsyth*, 472 U.S. at 527-28.  If the plaintiffs' allegations state a claim of violation of clearly established law, and the parties disagree as to what actions the law enforcement officers took, discovery may be appropriate for the limited purpose of addressing the issue of qualified immunity.  *Lovelace v. Delo*, 47 F.3d 286, 287 (8th Cir. 1995).  The assertion of a qualified immunity defense, however, "does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad. Discovery designed to flesh out the merits of a plaintiff's claim before a ruling on the immunity defense or discovery permitted in cases where the defendant is clearly entitled to immunity would certainly fall within this category." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987).

      **b.   State Actor**

An essential element in any § 1983 claim is that the conduct complained of must have been committed by a person acting under color of state law.  GPRMC contends it cannot be held liable under § 1983 because it was not a "state actor."  However, a private party may be held liable as a "state actor" if there is a close nexus (1) between the state and the private party, and (2) between the state and the alleged deprivation itself.  *See Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422 (8th Cir. 2007).  "One way a private party can

appropriately be characterized as a state actor is when it is 'a willful participant in joint activity with the State or its agents.'" *Id.* at 422.

"Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). In *West v. Atkins*, the Court observed that the State had an affirmative obligation to provide adequate medical care to the petitioner/inmate; the State had delegated that function to the respondent/doctor; and the respondent/doctor had voluntarily assumed that obligation by contract. 487 U.S. at 56.

In this case, Judge Zwart granted GPRMC's oral request that discovery be limited to the issue of whether GPRMC was a "state actor." Clearly, under *West v. Atkins*, all of the contractual relationships among GPRMC, Lincoln County, and the City of North Platte pertaining to medical care for arrestees, detainees, or inmates held in the custody of the City or County are relevant to the issue of whether GPRMC's conduct "can fairly be attributed to the State." *See West v. Atkins*, 487 U.S. at 55-56. It is unclear whether GPRMC has ever provided the relevant information to the plaintiff.[3]

---

[3] In this instance, GPRMC responded to plaintiff's Request No. 35 for production of documents that it has no "copies of [ ] contracts effective as of June 1, 2008" between it and the City of North Platte or Lincoln County." *See* Filing #110-2 at p. 5/6. As a practical matter, it does not seem very likely that GPRMC provides services to Lincoln County or the City of North Platte on a purely gratuitous basis. Any billing records–or other records of this "contractual" nature–for services requested by the City and County on behalf of persons in the custody of law enforcement would be relevant to GPRMC's asserted defense. Documents relating to GPRMC's acceptance of government funding allocated in furtherance of law enforcement objectives would also appear to be relevant.

### 2. Independent EMTALA Claim against GPRMC

In theory, GPRMC could be held liable for a violation of EMTALA without being held liable as a state actor under § 1983. Plaintiff's EMTALA claim arises under the "medical screening requirement" set out in 42 U.S.C. § 1395dd(a), which states:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

The statute applies to hospitals which have executed provider agreements under the Medicare Program, and was enacted "to address a distinct and rather narrow problem–the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them." *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996) (en banc). EMTALA created a private cause of action in favor of "*[a]ny* individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section[.]" (Emphasis added). Such individual "may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A).

The cause of action is not limited to situations involving a hospital's "dumping" of indigent patients. Rather, the question in a suit under 42 U.S.C. § 1395dd(d)(2)(A) is whether the patient "was afforded an 'appropriate' medical screening examination." *Summers*, 91 F.3d at 1137. "If a hospital fails to provide an appropriate medical screening examination, it is liable, no matter what the motivation was for this failure." *Id.* The statute, however, does not "create a federal remedy for

-8-

medical malpractice in emergency rooms." *Id.* at 1137-38. Considering these factors, the Eighth Circuit has construed the term "appropriate medical screening examination" to require "uniform treatment" of patients:

> An inappropriate screening examination is one that has a disparate impact on the plaintiff. Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities. It is up to the hospital itself to determine what its screening procedures will be. Having done so, it must apply them alike to all patients.

*Summers*, 91 F.3d at 1138. "[I]nstances of 'dumping,' or improper screening of patients for a discriminatory reason, or failure to screen at all, or screening a patient differently from other patients perceived to have the same condition, all are actionable under EMTALA. But instances of negligence in the screening or diagnostic process, or of mere faulty screening, are not." *Id*. at 1139.

Plaintiff alleges that GPRMC is liable under 42 U.S.C. § 1395dd(d)(2)(A), *in addition* to § 1983. To succeed on the independent EMTALA claim, the plaintiff must show non-uniform or disparate treatment. *See Summers*, 91 F.3d at 1138. The Amended Complaint (Filing #27 at ¶ 7) alleges that, by releasing Phillip Hatcher to the police for immediate incarceration at the county jail instead of admitting him for further evaluation and treatment, "GPRMC failed to apply its standard of screening uniformly to all patients, choosing to not give PHILLIP the same quality of screening that it would give to a similarly situated outpatient who was not in the custody of law enforcement."

### 3. Decision

Discovery has been stayed as to Lincoln County pending the court's ruling on the County's motion to dismiss based on qualified immunity. Judge Smith Camp entered her Order (Filing #146) on March 25, 2011. Based on the ruling, I find the Plaintiff's Motion to Vacate the Limitation on Discovery (Filing #109) should be granted as to Lincoln County.

Turning to GPRMC, the plaintiff asks the court to vacate its previous orders limiting discovery because employees and agents of each defendant interacted substantially with employees and agents of the other defendants, and the plaintiff should be allowed to discover the substance of these interactions. For reasons discussed above, the court finds, in principle, that the substance of the defendants' "interactions" would be relevant to the issue of whether GPRMC acted as a willful participant in joint activity with Lincoln County and/or the City of North Platte in conjunction with its treatment of Phillip Hatcher.

It appears that the limitation on discovery against GPRMC was entered solely to relieve GPRMC of the burden of defending the same case in two forums.[4] Shortly thereafter, however, the state court case was stayed at GPRMC's request pending the outcome of this case. Consequently, GPRMC is not currently under *any* burden to defend plaintiff's state court claims. Furthermore, even if GPRMC prevails on its motion for summary judgment as to the pending § 1983 claim, dismissal of the § 1983 claim would not resolve all of plaintiff's claims against GPRMC and would not obviate the need for discovery on the independent EMTALA claim or the common-law

---

[4]Judge Zwart's 10/15/2010 Memorandum and Order (Filing #73 at p. 2/4) reflects that: "GPRMC explained a parallel negligence against the medical center has now been filed in state court, and it should not be required to defend the same case in two forums."

-10-

negligence claims now pending in this court. GPRMC currently contends it was not a "state actor," and is not entitled to any limitation of discovery based on an immunity defense.

Under these circumstances, the court finds that plaintiff's motion to vacate the limitation on discovery should be granted as to all claims now pending in this court against GPRMC.

### D.  County's Motion for Protective Order and Motion for Sanctions

On July 12, 2010, plaintiff served interrogatories and requests for production on Lincoln County. (Filing #40, plaintiff's certificate of service). Under Rules 33 and 34 of the Federal Rules of Civil Procedure, responses to plaintiff's requests were due within 30 days of service, i.e., by Wednesday, August 11, 2010. *See* Fed. R.. Civ. P. 26(a)(1)(C).[5] The County did not serve any responses or objections to the discovery requests. Instead, on August 12, 2010, the County filed and served its motion to stay discovery (Filing #46). The County's motion did not mention the outstanding discovery requests. Plaintiff's objection (Filings #48 & #49) to the County's motion did, however, incorporate and discuss the outstanding interrogatories and requests for production. The County then addressed the outstanding discovery in its reply brief. Thus, the court was fully aware of plaintiff's outstanding requests when it granted the County's motion to stay discovery. Given the parties' arguments at the time, the order staying discovery can only be construed, and was fully intended, to apply to the County's obligation to respond to plaintiff's interrogatories and requests for production of documents.

Despite the entry of the stay, plaintiff served requests for admissions on Lincoln County on December 15, 2010 and December 16, 2010 (*see* Filings #103 & #107 and Filings #116-4 & #116-

---

[5]In response to the County's motion for summary judgment, plaintiff has stated that the responses were not due until August 12, 2010.

5), consisting of a total of five (5) short sentences. Obviously, it was improper for plaintiff to serve these requests on the County because discovery was stayed as to the County. The County's request for sanctions, however, appears to be based largely on (a) its attorney's personal experiences with plaintiff's attorney in other cases, (b) the fact that the County may find it prudent to remain involved in the discovery that plaintiff is permissibly conducting against the other defendants[6], and (c) plaintiff's filing the Motion to Vacate Discovery Limitations.

While the court does not condone plaintiff's service of the requests for admissions on the County, the "burden" of objecting to the requests was – or should have been – *de minimis*. The County's motion for protective order will be granted, in that the County does not have to respond to the plaintiff's requests for admissions. The court finds that the circumstances of this particular incident would make an award of expenses unjust, *see* Fed. R. Civ. P. 37(a)(5), and will deny the County's request for attorney's fees and sanctions.

## ORDER

For the reasons stated in this Memorandum and Order,

**IT IS ORDERED** that the parties' motions are resolved, as follows:

1. Plaintiff's Motion to Vacate Discovery Limitations (Filing #109) is granted as to the Great Plains Regional Medical Center (GPRMC). Plaintiff's discovery against GPRMC is no longer limited to the issue of whether GPRMC was a "state actor" for purposes of applying 42 U.S.C. § 1983.

2. Plaintiff's Motion to Vacate Discovery Limitations is granted as to Lincoln County.

---

[6]In Filing #139, the County sought to prevent the plaintiff from deposing an individual affiliated with the City of North Platte, who was not an employee of the County, and the City had not objected to plaintiff deposing its employee. The County's motion was denied.

     3.    Lincoln County's Motion (Filing #118) to strike plaintiff's brief is denied.

     4.    Lincoln County's Motion (Filing #115) for a protective order is granted.  The County's obligation to respond to plaintiff's outstanding interrogatories and requests for production of documents is stayed pursuant to Orders #54 and #67.  Plaintiff's requests for admissions served on Lincoln County are hereby quashed, and Lincoln County does not have to respond to plaintiff's requests for admissions.  Based on Judge Smith Camp's Order (Filing #146), the plaintiff may renew relevant discovery responses on or before April 18, 2011.

     5.    Lincoln County's request for attorney's fees and expenses is denied.

A party may object to this order by filing an "Objection to Magistrate Judge's Order" within 14 days after being served with the order.  An objecting party must comply with all requirements of NECivR 72.2.

DATED: April 5, 2011.

                          BY THE COURT:

                          S/F.A. Gossett, III
                          United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.